IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:17-CV-00497-GCM

| | |
|---|---|
| WARREN H. HALL, JR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| CHARTER COMMUNICATIONS, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| _____) | |

This matter is before the Court upon Defendant's Motion for Partial Dismissal of Complaint. The motion has been fully briefed and is ripe for disposition.

**FACTUAL BACKGROUND**

Plaintiff's claims in this action stem from the termination of his employment with Defendant Charter Communications, LLC ("Charter"). At the time of his termination from employment, Plaintiff was employed as a Fleet Market Manager. (Compl. ¶ 8). Plaintiff claims that unnamed agents or employees of Charter informed an unidentified co-worker of Plaintiff's that Plaintiff was being investigated for accepting kick-backs and converting company assets. (Compl. ¶ 38). Plaintiff further alleges that these two unnamed agents or employees of Defendant made false statements and used such statements to subsequently wrongfully terminate Plaintiff's employment on the basis of his age. (Compl. ¶¶ 11, 19, 24).

Plaintiff alleges the following causes of action against Charter: (1) wrongful harassment and termination in violation of public policy ("First Cause of Action); (2) wrongful harassment

1

and termination in violation of the Age Discrimination in Employment Act ("ADEA") ("Second Cause of Action"); slander and libel ("Third Cause of Action"); intentional infliction of emotional distress ("IIED") ("Fourth Cause of Action"); and negligent infliction of emotional distress ("NIED") ("Fifth Cause of Action"). Defendant moves to dismiss Plaintiff's First, Third, Fourth and Fifth Causes of Action for failure to state a claim as a matter of law.

**DISCUSSION**

To survive a Rule 12(b)(6) motion to dismiss, the court must determine whether the complaint "provide[s] enough facts to state a claim that is plausible on its face." *Sarvis v. Alcorn*, 826 F.3d 708, 718 (4th Cir. 2016) (quoting *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009)). In order to reach facial plausibility, the plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff's First Cause of Action alleges harassment in violation of North Carolina public policy. Specifically, Plaintiff alleges that "[i]n harassing and ultimately terminating Plaintiff in whole or in part because of his age, Defendant violated the public policies of the State of North Carolina." (Compl. ¶ 28). Such a claim fails as a matter of law because both North Carolina state and federal courts have repeatedly found that there is no separate cause of action for harassment under the North Carolina Equal Employment Practices Act ("NCEEPA"). *See*, *e.g.*, *Townsend v. Shook*, 323 F. App'x 245, 251 (4th Cir. 2009) (determining no private cause of action for harassment exists under the NCEEPA); *Arbia v. Owens-Illinois, Inc.*, No. 1:02CV00111, 2003 WL 21297330, at *9 (M.D.N.C. June 4, 2003). Thus, to the extent that Plaintiff attempts to assert a harassment claim in violation of public policy, such a claim is improper must be dismissed as a matter of law.

Plaintiff's Third Cause of Action is for defamation.[1] To raise an actionable claim of defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person. *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 897 (N.C. Ct. App. 2002) (citation omitted), *cert. denied*, 540 U.S. 965 (2003).

Plaintiff makes the following vague and conclusory allegations in support of his defamation claims:

- Asserts that these unnamed agents or employees "used slanderous innuendo and false statements about the Plaintiff when interviewing Plaintiff and his coworkers in order to cast Plaintiff in a false light." (Compl. ¶ 19);

- References alleged statements made by unnamed agents or employees of Defendant to Plaintiff's co-worker regarding Defendant's investigation into Plaintiff's acceptance of kick-backs and conversion of company assets. (Compl. ¶ 38);

- Alleges that Charter "falsely alleged [to Plaintiff] that he had violated Company Policies and Company Standards for Conducting Business[.]" (Compl. ¶ 39);

- Alleges Charter committed libel "in a written statement with the North Carolina Unemployment Commission[.]" (Compl. ¶ 45).

First of all, to the extent Plaintiff's defamation claim is based upon communications made in the course of the ESC proceeding, the claim is barred by an absolute privilege and must be dismissed as a matter of law. North Carolina courts have long held that unemployment proceedings constitute judicial proceedings and, therefore, statements made in the course of such proceedings are absolutely privileged and cannot support a defamation claim as a matter of law. *See*, *e.g.*, *Howard v. Food Lion, Inc.*, 232 F. Supp. 2d 585, 598-

---

[1] "[T]he term defamation applies to the two distinct torts of libel and slander." *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002) (citation omitted), *cert. denied*, 540 U.S. 965 (2003).

99 (M.D.N.C. 2002) (granting Rule 12(b)(6) motion and dismissing *pro se* plaintiff's defamation claim based on alleged false statements made during ESC hearing) (citing *Jarman v. Offutt*, 80 S.E.2d 248, 251 (N.C. 1954). In fact, the North Carolina General Statutes expressly provide that oral or written correspondence in the course of an ESC proceeding "shall be *absolutely privileged communication* in any civil or criminal proceedings . . . ." N.C. Gen. Stat. § 96-4(x)(5) (2013) (emphasis added).

With regard to Plaintiff's remaining allegations, in order to allege a defamation claim, the Plaintiff must show: (1) that the defendant made false, defamatory statements; (2) of or concerning the plaintiff; (3) which were published to a third person; and (4) which caused injury to the plaintiff's reputation. *Tyson v. L'eggs Products, Inc*., 351 S.E.2d 834, 840 (N.C. Ct. App. 1987). Plaintiff has failed to sufficiently allege the first (false, defamatory statements) and third (publication to a third party) elements of his defamation claim. First, he failed to identify with any specificity whatsoever the purported statements he contends are defamatory, warranting dismissal of his defamation claim as a matter of law. *See*, *e.g*., *Pierce v. Atl. Grp., Inc*., 724 S.E.2d 568, 578 (N.C. Ct. App. 2012) (citing *Stutts v. Duke Power Co*., 266 S.E.2d 861, 866 (N.C. Ct. App. 1980) ("the words attributed to defendant [must] be alleged 'substantially' *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory")). While Plaintiff makes vague and conclusory references to alleged "slanderous innuendo and false statements" made during interviews with Plaintiff and his co-workers (Compl. ¶ 19), Plaintiff has provided no notice to Defendant (or this Court) of what specific statements Plaintiff actually contends are defamatory or the circumstances surrounding their publication. *Cf. Suarez v. Charlotte-Mecklenburg Sch*., 123 F. Supp. 2d 883, 892 (W.D.N.C. 2000) (dismissing defamation claim where conclusory allegations in "bare bones

Complaint" lacked content of allegedly false statement, how or when published or manner of defamation).

Second, Plaintiff failed to assert facts showing publication of any allegedly false statements. The only statements Plaintiff sets out with any indicia of particularity concern Defendant's explanation to Plaintiff for the termination of his employment. To the extent Plaintiff purports to allege that Defendant's explanation to Plaintiff for the termination of his employment constitutes "false statements," glaringly absent from the Complaint is any indication that such statements were published to a third party outside of the employment relationship. *See Reikowski v. Int'l Innovation Co. USA*, No. 3:12CV854-GCM, 2013 WL 526489, at \*3 (W.D.N.C. Feb. 11, 2013) ("In the employment context, agents and employees of a single employer are not considered third persons to the employer or to each other. Therefore no publication occurs when statements are only communicated between officers, employees and agents of a single employer.")(internal citation omitted).

Moreover, even assuming Plaintiff's assertion that Charter "agents/employees informed the Plaintiff's coworker they were investigating Plaintiff accepting kick-backs and of converting company assets" constitutes publication, he fails to allege the falsity of this statement. (Compl. ¶ 38). It is true that he was being investigated for those reasons—his employment was ultimately terminated for improper dealings with vendors. The Complaint is devoid of any facts showing that Plaintiff was not being investigated for the same, or that the information allegedly shared with the coworker was false. As a matter of law, Plaintiff cannot base a claim of defamation on true statements. *Williams v. State Farm Mut. Auto. Ins. Co.*, 312 S.E.2d 905, 907 (N.C. Ct. App. 1984) ("To be actionable, the [purported defamatory] statement must be false."). As Plaintiff has

failed to allege any false defamatory statements that were published to a third party, Plaintiff's defamation claim must be dismissed as a matter of law.

Plaintiff's Fourth Cause of Action alleges intentional infliction of emotional distress ("IIED"). In order to state a claim for IIED, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous, and (2) the conduct was intended to and does in fact cause severe emotional distress. *Jackson v. Blue Dolphin Communications of NC, L.L.C*., 226 F. Supp. 2d 785, 793 (W.D.N.C. 2002); *Guthrie v. Conroy*, 567 S.E.2d 403, 410 (N.C. Ct. App. 2002). With respect to the first element, the initial determination of whether the alleged conduct was intentional, extreme and outrageous enough to support an IIED claim is a question of law. *Guthrie*, 567 S.E.2d at 408. To be considered "extreme and outrageous" the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co*., 340 S.E.2d 116, 123 (N.C. Ct. App. 1986) (internal quotations omitted). North Carolina courts have "set a high threshold for a finding that conduct meets [this] standard." *Dobson v. Harris*, 521 S.E.2d 710, 715 (N.C. Ct. App. 1999), *rev'd in part on other grounds*, 530 S.E.2d 829 (N.C. 2000). This threshold "'excludes a great deal of conduct that is undoubtedly very bad and is properly considered reprehensible.'" *Bond v. Rexel, Inc. et al.*, 5:09-CV-122, 2011 WL 1578502, at *6 (W.D.N.C. April 26, 2011) (quoting *Walker v. Sullair Corp.*, 946 F.2d 888 (4th Cir. 1991)). Indeed, mere "insults, indignities, and threats" are not enough to rise to the level of extreme and outrageous conduct. *Guthrie*, 567 S.E.2d at 409; *see also Johnson v. Bollinger,* 356 S.E.2d 378 (N.C. Ct. App. 1987) (affirming dismissal of claim pursuant to Rule 12(b)(6) where plaintiff alleged armed animal warden shook his hand in plaintiff's face, shouted profanities, called him a liar, and threatened to "get" him).

Moreover, allegations of discriminatory treatment, without more, generally do not constitute "extreme and outrageous" conduct necessary for an IIED claim as a matter of law. *Jackson*, 226 F. Supp. 2d at 794 (emphasizing wrongful termination, "allegedly in violation of federal law alone, does not constitute extreme and outrageous conduct."); *Pardasani v. Rack Room Shoes Inc.*, 912 F. Supp. 187, 192 (M.D.N.C. 1996) (finding no "extreme and outrageous" conduct despite allegations that plaintiff was given poor performance evaluations, denied promotions available to others, excluded from training, and terminated from employment in violation of ADEA); *Frazier v. First Union Nat'l Bank*, 747 F. Supp. 1540, 1553 (W.D.N.C. 1990) (allegations of race and sex discrimination did not show extreme and outrageous conduct under North Carolina law).

The Court finds as a matter of law that Plaintiff's allegations do not meet the high threshold of "extreme and outrageous" conduct. Accordingly, this claim must be dismissed.

Plaintiff's Fifth Cause of Action is for negligent infliction of emotional distress ("NIED"). For this claim, Plaintiff must establish the following: (1) Defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress; and (3) the conduct did in fact cause Plaintiff severe emotional distress. *Johnson v. Scott*, 528 S.E.2d 402, 404 (N.C. Ct. App. 2000) (quoting *Johnson v. Ruark Obstetrics and Gynecology Assoc.*, 395 S.E.2d 85, 97 (N.C. 1990)). Implicit within these elements is a requirement that the defendant was negligent with respect to a legal duty owed to the plaintiff. *Guthrie*, 567 S.E.2d at 410. Courts consistently dismiss NIED claims where they are based solely on intentional conduct such as claims of discrimination and retaliation, as opposed to negligent conduct. *See e.g.*, *Gourley v. Ken Wilson Ford*, No. 1:06CV141, 2006 WL 2375455, at *1 (W.D.N.C. Aug 15, 2006) ("When the plaintiff's complaint alleges acts of

7

discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress.") (internal quotes and citations omitted).

As in *Gourley*, Plaintiff has done nothing more than allege in conclusory fashion that Defendant "negligently" engaged in conduct that was "reasonably foreseeable" to cause him emotional distress. (Compl. ¶¶ 56, 57). However, the remainder of Plaintiff's Complaint addresses intentional acts on the part of Defendant; namely, that Charter defamed Plaintiff, and subjected Plaintiff to alleged intentional discrimination entitling him to punitive damages. (Compl. ¶¶ 51, 54). This is woefully insufficient to meet the pleading standards for a claim of negligent infliction of emotional distress. *See*, *e.g.*, *Riepe v. Sarstedt, Inc.*, No. 5:09- cv-00104, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010) ("basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause of action for negligence"); *Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 733-34 (M.D.N.C. 2004) (holding NIED claim based on allegations of discrimination and retaliation dismissed when no negligence alleged). As Plaintiff only alleges intentional conduct on the part of Defendant, Plaintiff's NIED claim must likewise be dismissed as a matter of law.

IT IS THEREFORE ORDERED that Defendant's Motion for Partial Dismissal of Plaintiff's Complaint is hereby GRANTED, and Plaintiff's First, Third, Fourth and Fifth Causes of Action are dismissed with prejudice.

Signed: January 31, 2018

Graham C. Mullen
United States District Judge